IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MELISSA MCGEE,<br>#13592-002,<br><br>                  Plaintiff,<br><br>    vs.<br><br>BUREAU OF PRISONS, *et al.*,<br><br>                  Defendants. | CIV. NO. 23-00190 LEK-KJM<br><br>ORDER DISMISSING<br>COMPLAINT AND ACTION |

## ORDER DISMISSING COMPLAINT AND ACTION

Pro se Plaintiff Melissa McGee ("McGee") brought this suit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that the Federal Bureau of Prisons ("BOP") and two prison officials at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu")—that is, Lieutenant Tabar and BOP Captain Nunez—violated her rights by retaliating against her, moving her to the Special Housing Unit, and destroying or damaging her personal property.[1]  *See* ECF No. 1 at PageID.1–PageID.2.  For the reasons stated

---

[1] According to the Federal Bureau of Prisons' online inmate locator, McGee remains incarcerated at FDC Honolulu.  *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "13592-002"; and select "Search") (last visited May 15, 2023).

below, the Court concludes that McGee cannot pursue her claims under *Bivens* and,

therefore, DISMISSES the Complaint.  Because amendment of McGee's claims

would be futile, this dismissal is with prejudice.

## I. <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis pleadings pursuant to

28 U.S.C. § 1915(e)(2).  *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir.

2018).  Claims or complaints that are frivolous, malicious, fail to state a claim for

relief, or seek damages from defendants who are immune from suit must be

dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc);

*Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. § 1915(e)(2) involves the same standard of review

as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*,

791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint

must "contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks and citation omitted).  A claim is "plausible" when the facts alleged

support a reasonable inference that the plaintiff is entitled to relief from a specific

defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants'

pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338,

342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  **BACKGROUND**[2]

On March 23, 2023, prison officials at FDC Honolulu conducted a "mass interview" of inmates in the female housing unit.  ECF No. 1 at PageID.1.  According to McGee, prison officials conducted the inquiry in response to an allegation that a staff member was having an "inappropriate" relationship with an inmate.  *Id.*

As a part of the investigation, Lt. Tabar individually interviewed McGee.  *Id.* During the interview, Lt. Tabar asked McGee how long she had been in prison and where she had been incarcerated.  *Id.*  McGee stated, among other things, that, at one point, she was transferred from one prison to another after serving as a witness in a Prison Rape Elimination Act investigation.  *Id.*

Later the same day, at Cpt. Nunez's direction, Lt. Tabar moved McGee to the Special Housing Unit ("SHU").  *Id.*  McGee remained in the SHU for twelve days— that is, until April 3, 2023.  *Id.*  Upon her release from the SHU, McGee discovered

---

[2] McGee's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

that some of her personal property was damaged or destroyed. *Id.* According to McGee, she was redesignated to the United States Penitentiary Hazelton in Bruceton Mills, West Virginia on April 21, 2023. *Id.* at PageID.1–PageID.2.

The Court received McGee's Initial Complaint ("Complaint") on April 26, 2023. *Id.* at PageID.1. In the Complaint, McGee alleges that Lt. Tabar and Cpt. Nunez violated her constitutional rights by retaliating against her, moving her to the SHU, and destroying or damaging her personal property. *Id.* at PageID.2. McGee seeks more than $120,000 based on her claims. *Id.* The Court granted McGee's in forma pauperis application on May 8, 2023. ECF No. 4.

### III. <u>ANALYSIS</u>

McGee brought this suit pursuant to *Bivens* alleging that Defendants violated her constitutional rights by retaliating against her, moving her to the SHU, and destroying or damaging her personal property. Before the merits of McGee's claims can be reached, however, the Court must first decide whether a *Bivens* remedy is available to McGee. *See, e.g.*, *Manansingh v. United States*, Case No. 2:20-cv-01139-DWM, 2021 WL 2080190, at *8 (D. Nev. May 24, 2021) ("In a constitutional action against a federal officer, a threshold consideration is whether a plaintiff may bring a *Bivens* suit in the first place."). Because no such remedy exists, McGee's claims against Defendants must be dismissed.

A.     **Legal Framework for Determining Whether a *Bivens* Remedy Exists**

While "Congress has made a cause of action available to any person who has suffered 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' at the hands of someone acting under color of state law," it "has not created a general cause of action to redress violations of the Constitution by *federal* officers." *Pettibone v. Russell*, 59 F.4th 449, 454 (9th Cir. 2023) (quoting 42 U.S.C. § 1983).

In three cases decided between 1971 and 1980, however, "the Supreme Court held that the Constitution contains an implied cause of action through which plaintiffs can seek damages from federal officers who violate their constitutional rights." *Id.* In *Bivens*, the Court held that a plaintiff could seek damages from Federal Bureau of Narcotics agents who allegedly violated the Fourth Amendment right to be free from unreasonable searches and seizures. 403 U.S. at 397. The Court extended the *Bivens* remedy in *Davis v. Passman*, where a plaintiff alleged that her employer, a Member of Congress, had discriminated against her because of her sex, in violation of the Due Process Clause of the Fifth Amendment. 442 U.S. 228, 230–31 (1979). Finally, in *Carlson v. Green*, the Court held that the estate of a deceased inmate could seek damages from federal prison officials who allegedly violated the inmate's Eighth Amendment right to be free from cruel and unusual punishment while treating a prisoner's severe asthma that ultimately resulted in the prisoner's death. 446 U.S. 14,

5

16–18 (1980).  "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Abbasi*, 582 U.S. at 135 (citation omitted); *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) ("At bottom, creating a cause of action is a legislative endeavor.").  Indeed, the Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution."  *Egbert*, 142 S. Ct. at 1809.  Since 1980, therefore, the Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[3]  *Abbasi*, 582 U.S. at 135 (citation omitted).

---

[3] The Supreme Court has declined to create a *Bivens* remedy in the following cases:  a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. at 155; a Fourth and Fifth Amendment suit against a United States Border Patrol agent, *Hernandez v. Mesa*, 140 S. Ct. 735 (2020); and a First and Fourth Amendment suit against a United States Border Patrol Agent, *see Egbert*, 142 S. Ct. at 1793.

Now, when asked to imply a *Bivens* remedy, courts must use "caution." *Egbert*, 142 S. Ct. at 1803. If there is even a "single sound reason" to think that Congress might doubt the efficacy or necessity of a damages remedy, courts must refrain from creating it. *Id.* Thus, "'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?'" *Id.* (citation omitted). In "most every case," the answer will be Congress. *Id.*

In deciding whether a *Bivens* remedy is available in a particular case, courts apply a two-step framework. *Pettibone*, 59 F.4th at 454. At step one, courts "ask whether the case presents 'a new *Bivens* context.'" *Egbert*, 142 S. Ct. at 1803. At step two, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"[4] *Pettibone*, 59 F.4th at 454 (citation omitted).

## B.   McGee's Claims Against the BOP

McGee names the BOP as a Defendant. ECF No. 1 at PageID.1. Even assuming the availability of a *Bivens* remedy to a federal prisoner against a prison

---

[4] In *Egbert*, the Supreme Court noted that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803. At least one court of appeals has suggested in dicta that this sentence "appear[s] to alter the existing two-step *Bivens* framework." *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022). The Ninth Circuit, however, has stated that *Egbert* only "reiterate[d] the longstanding first step of the *Bivens* question" and "clarified" the second step. *Mejia v. Miller*, 61 F.4th 663, 667 (9th Cir. 2023). The Court therefore applies the two-step framework, as clarified in *Egbert*, to analyze McGee's claims.

official in his or her individual capacity, the Supreme Court has unequivocally stated "the prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001). McGee's claims against the BOP are therefore DISMISSED with prejudice.

**C.     McGee's First Amendment Claims**

McGee alleges that Lt. Tabar and Cpt. Nunez unlawfully retaliated against her. ECF No. 1 at PageID.1-PageID.2.

The First Amendment prohibits prison officials from retaliating against prisoners for exercising their First Amendment rights. *See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). In *Egbert*, however, the Supreme Court held that "there is no *Bivens* action for First Amendment retaliation." 142 S. Ct. at 1807. In reaching this conclusion, the Court explained that "[e]xtending *Bivens* to alleged First Amendment violations would pose an acute risk of increasing" substantial social costs "including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* (internal quotation marks and citation omitted); *see also Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019) (concluding that "special factors counsel against extending *Bivens*" to a prisoner's First Amendment retaliation claim). "Federal employees 'face[d with] the added risk of personal liability for decisions that they believe to be a correct response to improper [activity] would be deterred from' carrying out their

duties." *Egbert*, 142 S. Ct. at 1807 (alterations in original).  Considering these costs, the Court concluded that "'Congress is in a better position to decide whether or not the public interest would be served' by imposing a damages action." *Id.*  Thus, any First Amendment retaliation claims brought pursuant to *Bivens* cannot proceed and are DISMISSED with prejudice.

**D.     McGee's Eighth Amendment Claims**

McGee asserts that Lt. Tabar and Cpt. Nunez violated her rights under the Eight Amendment by moving her to the SHU and damaging or destroying her property.  ECF No. 1 at PageID.2.  The most relevant Supreme Court case is *Carlson*, which also involved Eighth Amendment claims.

**1.     McGee's Claims Present a New Context**

The Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 140 S. Ct. at 743.  A case presents a new context if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at 139.  The Supreme Court has provided a non-exhaustive list of differences that may be "meaningful" including the rank of the officers involved, the constitutional right at issue, the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted, the statutory or other legal mandate under which the officer was operating, the risk of disruptive intrusion by the Judiciary into the functioning of

other branches of government, and the presence of potential special factors that previous *Bivens* cases did not consider.  *Id.* at 139–40.

The Supreme Court has stated that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."  *Hernandez*, 140 S. Ct. at 743.  Thus, even where a "case has significant parallels to one of the [Supreme Court's] previous *Bivens* cases, it can present a new context."  *Abbasi*, 582 U.S. at 147.  In other words, "even a modest extension is an extension."  *Id.*; *see Mejia*, 61 F.4th at 669 ("[R]arely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly.").

The Supreme Court's analysis in *Egbert* illustrates these principles.  In *Egbert*, a bed-and-breakfast operator and Border Patrol confidential informant alleged, among other things, that a Border Patrol agent used excessive force on him while trying to conduct a search on the plaintiff's property.  142 S. Ct. at 1801.  While noting that *Egbert* and *Bivens* involved "similar allegations of excessive force and thus arguably present[ed] 'almost parallel circumstances' or a similar 'mechanism of injury,'" the Supreme Court stated that these "superficial similarities [were] not enough to support the judicial creation of a cause of action."  *Id.* at 1805.

In *Carlson*, an inmate was diagnosed as a "chronic asthmatic" when he entered the federal prison system.  *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978), *aff'd*, 446 U.S. 14 (1980).  The inmate was later hospitalized for eight days because of the

10

condition, and the treating physician recommended that the inmate be transferred to a different facility. *Id.* Despite the doctor's recommendation, the inmate remained in the same facility. *Id.* Then, when the inmate was admitted to the prison hospital with an asthmatic attack, he was not seen by a doctor for eight hours. *Id.* As the inmate's breathing became more difficult, a non-licensed nurse in charge of the prison hospital deserted the inmate to distribute medication elsewhere. *Id.* When the nurse returned, he attempted to use a respirator on the inmate. *Id.* The nurse did this despite being told two weeks earlier that the respirator was broken. *Id.* When the inmate told the nurse that the respirator was making his breathing worse, the nurse administered two doses of a drug contraindicated for someone suffering an asthmatic attack. *Id.* A half-hour after the second injection, the inmate suffered a respiratory arrest. *Id.* The nurse and another prison official then brought emergency equipment to administer an electric jolt to the inmate, but neither man knew how to operate the machine. *Id.* Only at that point was the inmate taken to a hospital, where he was pronounced dead. *Id.*

Here, McGee's claims have nothing to do with the denial of medical care, as they did in *Carlson*. Instead, McGee complains that prison officials moved him to the SHU and damaged or destroyed his property. *See Marler v. Derr*, Civ. No. 22-00088 JMS-WRP, 2023 WL 2614314, at \*5 (D. Haw. Mar. 23, 2023) (explaining that Eighth Amendment threat-to-safety claim was meaningfully different from claims in

Carlson because the mechanism of injury was different).  McGee concedes that recognizing her claims would require an "expansion" or "extension" of *Bivens*.  ECF No. 1 at PageID.2.  Although McGee asserts that such an expansion or extension would be only "modest," the Supreme Court has made clear that "even a modest extension is an extension."  *Abbasi*, 582 U.S. at 147; *Mejia*, 61 F.4th at 669.

Furthermore, the Supreme Court has stated that "the presence of potential special factors that previous *Bivens* cases did not consider" is a relevant consideration in deciding whether a case presents a new context.  *See Abbasi*, 582 U.S. at 140; *see also Egbert*, 142 S. Ct. at 1803 ("[W]e have explained that a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.") (citation omitted).  As explained in the following section, special factors weigh against recognizing a *Bivens* remedy for McGee's claims, including the existence of the BOP's administrative remedy program.  Because this factor was not considered by the Court in *Carlson*, this is another reason that McGee's claims arise in a new context.  *See Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (unpublished) ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the

existence of the Bureau of Prisons' formal review process for inmate complaints.")
(citation omitted and brackets in original).[5]

For all these reasons, McGee's claims are meaningfully different from the
claims in *Carlson*, and the Court must proceed to step two.

## 2. Special Factors Counsel Against Recognizing a *Bivens* Remedy

"[I]f a claim arises in a new context, a *Bivens* remedy is unavailable if there are
'special factors' indicating that the Judiciary is at least arguably less equipped than
Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"
*Egbert*, 142 S. Ct. at 1798 (citation omitted).  Thus, at step two, "[a] court faces only
one question: whether there is *any* rational reason (even one) to think that *Congress* is
better suited to 'weigh the costs and benefits of allowing a damages action to
proceed.'"  *Id.* at 1803 (citation omitted).  "If there is even a single 'reason to pause
before applying *Bivens* in a new context,' a court may not recognize a *Bivens*
remedy."  *Id.* (citation omitted).  In conducting this analysis, courts must ask
"'broadly' if there is any reason to think that 'judicial intrusion' into a given field
might be 'harmful' or 'inappropriate.'"  *Id.* at 1805 (citation omitted).  If there is such
a reason "or even if there is the '*potential*' for such consequences, a court cannot

---

[5] McGee's reliance on *Hoffman v. Preston*, 26 F.4th 1059 (9th Cir. 2022), is misplaced.  In light of
*Egbert*, the Ninth Circuit withdrew that published decision, *Hoffman v. Preston*, 50 F.4th 927 (9th
Cir. 2022), and issued a memorandum explaining that the federal prisoner's Eighth Amendment
claims could not proceed, *Hoffman*, 2022 WL 6685254, at *1.

afford a plaintiff a *Bivens* remedy." *Id.* at 1805–06 (citation omitted).  This will be the outcome in "most every case." *Id*. at 1803.

For example, "[i]f there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* at 1804.  It does not matter whether a *Bivens* remedy would disrupt the remedial scheme, nor does it matter whether the court should provide a remedy for a wrong that would otherwise go unaddressed.  *Id.* Likewise, "it does not matter that 'existing remedies do not provide complete relief.'" *Id.* (citation omitted).  "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807.

Here, the Court cannot recognize a *Bivens* remedy because alternative remedies are available to McGee.  First, the Executive, through the BOP, has an alternative remedial program for federal prisoners like McGee.  *See* 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."); *see also Malesko*, 534 U.S. at 74 (concluding that *Bivens* remedy was unavailable, in part, because "[i]nmates . . . have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy

Program"); *Hoffman*, 2022 WL 6685254, at *1 ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original).

Second, Congress provided an alternative remedy through the Federal Tort Claims Act ("FTCA"). *See Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (identifying the FTCA as an alternative process available to federal prisoners); *Prescott v. United States*, No. 2:20-cv-2740-SB (SK), 2022 WL 18859316, at *2 (C.D. Cal. Dec. 21, 2022) ("[A]ggrieved federal prisoners can bring suit for damages against the United States for the torts of its federal employees under the [FTCA]."), *report and recommendation adopted*, No. 2:20-cv-2740-SB (SK), 2023 WL 2188692 (C.D. Cal. Feb. 22, 2023); *Donaldson v. Garland*, No. 2:21-cv-1178 TLN KJN P, 2022 WL 10189084, at *3 (E.D. Cal. Oct. 17, 2022) ("[P]laintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process and a federal tort claims action."), *report and recommendation adopted*, No. 2:21-cv-1178 TLN KJN P, 2022 WL 17722326 (E.D. Cal. Dec. 15, 2022).

As the Supreme Court has stated, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 1800. This case does not present the unusual circumstances required to recognize a *Bivens*

remedy.  Thus, McGee's Eighth Amendment claims are DISMISSED.  Because

amendment would be futile, these claims are dismissed with prejudice.

## IV.  <u>28 U.S.C. § 1915(g)</u>

McGee is notified that this dismissal may count as a "strike" under 28 U.S.C.

§ 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or

appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated
> or detained in any facility, brought an action or appeal in a court of
> the United States that was dismissed on the grounds that it is
> frivolous, malicious, or fails to state a claim upon which relief may
> be granted, unless the prisoner is under imminent danger of serious
> physical injury.

28 U.S.C. § 1915(g).

## V.  <u>CONCLUSION</u>

(1) The Complaint, ECF No. 1, is DISMISSED for failure to state a claim

pursuant to 28 U.S.C. § 1915(e)(2).

(2) Because amendment of McGee's claims would be futile, the Complaint and

this action are DISMISSED WITH PREJUDICE, and this dismissal may constitute a

strike under 28 U.S.C. § 1915(g).

//

//

//

//

(3) The Clerk of Court is DIRECTED to enter judgment in favor of Defendants and to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 15, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MELISSA MCGEE VS. BUREAU OF PRISONS, ET AL.; CV 23-00190 LEK-KJM; ORDER DISMISSING COMPLAINT AND ACTION**